Audrain County Joint Communications and this is a case about a couple of different issues. One of the most important is whether an insurance policy could be reformed to include a provision, an endorsement that excluded from coverage, excluded matters from coverage that in a way that would preserve sovereign immunity in the state of Missouri. Let me describe what I think is the scenario here that Argonaut presented to the district court in which the district court basically adopted. You have elected and appointed officials, sheriffs, other county officials who are on the board of ACJC and they are procuring insurance. They advertise for bids, they hear some bad felter insurance agency is one. It markets a policy called VFIS, Volunteer Fireman's Insurance Service. It's a specialized policy for emergency service type operations and there was a policy that Argonaut sold in the state of Missouri. There was only one policy. It included an endorsement that preserved sovereign immunity. The board voted and they bought the policy. So the agreement was Argonaut wanted to sell a policy and my client bought that policy. When the policy was assembled, a piece of paper was left off the back of the policy in a room probably with no windows in York, Pennsylvania by a clerk and that endorsement, which was not included, then deprived the policy of the language that would have carved out coverage that waived sovereign immunity. So the mistake in this case where we asked for reformation was would there be this, would we buy the policy that was being offered and was this endorsement that was the only policy that was offered in the state of Missouri be added to the policy through reformation? And in this case significantly, both of the parties to the insurance contract agreed. Was there any evidence that your client was given a draft policy that included that statement or any evidence that they discussed the, I've forgotten what they call it, but the endorsement? No, there was no specific evidence and there wasn't any direct discussion of that. The evidence was from the insurance agent. So how could it have been a mutual mistake at the time? It's like if you go to a store and buy something and it has a box and it has a list of contents in the box and you bought the box, you bought the toy, whatever is in it, and when you get it home, what is supposed to be in it, what was offered, it's not in that box. So that goes back to my question. Was there any evidence that your client got the list of contents in the box, so to speak? No, there was not, but the evidence was that in the state of Missouri it is very, very common and very uncommon to get it, to buy a policy that waives sovereign immunity. That's something that you typically have to ask for. I mean, I think that might help prove that the insurance company made a mistake, but how is it then a mutual mistake? It's a mutual mistake because the testimony was that from my clients, especially the executive director, was that they believe they had sovereign immunity and they didn't believe that they wanted to waive it. No one expressly wanted to waive it. And if you look at brief, we cite many cases that talk about a clear and knowing and informed waiver. You have elected officials, elected and appointed officials that are governing this public entity. They are expending taxpayers' dollars and you would think that you should have to know you're waiving sovereign immunity. What authority do you have for that, that it has to be a knowing and intelligent waiver? It's cited in our brief. I can give you some page sites to it. I may have to look those up and get them to you on our website. Are you talking waiver in general or waiver under 537.610? Waiver in general. I think that's probably true in general, but do you have any support under 537.610 that says it has to be knowing and intelligent? I'll have to look and see if I have any of those cases on that specific issue, but why would there be a difference? If you are waiving something that is of value, especially if it's in the exercise of the public trust, why would you be able to do it by accident? This is a significant issue here, and in this case, the policy that was offered was purchased and that policy, all of the evidence is that policy included that endorsement that preserves sovereign immunity. And think for a moment what would happen if the circumstances were the other way around. What if we were being sued by Argonaut and instead of the endorsement off when she should have put it on, that underwriter or clerk puts the endorsement on when she should have left it off. Then we would be standing here with a policy where both parties intended to waive sovereign immunity, but because of the mistake in the insurance office, sovereign immunity wasn't waived unless you reform the contract. So when you look at it from both sides, it looks a little different. And in this case, it's important to make sure that both parties are in agreement that that's the policy that they wanted, the one that was sold by the insurance company. Immunity is the exception, not the rule. Argonaut has to bring itself within an exception here, and that is a burden that they have not met. Was there an evidentiary proceeding on this? There was a bench trial, right? There was on reformation and the other... So are we dealing with a finding of fact by the district court as to the state of mind of the parties? We are. And that's subject to clear error review, right? Right. We have a heavy burden to overcome that. But our evidence is and has been very simple. They offered a policy, we bought it. Then when it was put together, when it was assembled, it didn't include all the pages that it should, so the page should be added to it through reformation. And we cite a case where that talks about when the parties to the contract agree that that goes a long way, if not per se, demonstrates clear and convincing evidence that reformation is appropriate. Let's talk for a moment about immunity under Section 190.307. There isn't a... Before you get into the merits of that, I had a question about our jurisdiction on that point. We had those supplemental statements of jurisdiction that you cited. The cases cited are, I believe, 11th Amendment cases that involve sovereign immunity of the state, where the Supreme Court has said that comes with an appeal, denying sovereign immunity of the state, comes within the collateral order doctrine because it's immunity from suit. And this statutory immunity that you're referring to now says in the text that no agency shall be liable for any civil damages. So I wonder if you have any authority that this is also immunity from suit, not just immunity from damages. And second, if it's only immunity from damages, do you have a brief argument as to why we would have jurisdiction over an interlocutory appeal? Other than the cases that we have already cited, I don't have anything in addition. I would say that, first of all, we're here, so the inconvenience and the problems with interlocutory appeal are lessened because there is a right to an interlocutory appeal on one issue, and we're here, so it would be within the court's jurisdiction to reach out and deal with that at this time. And the other thing that I would say is, I don't believe that there was any more express mention in the doctrines that supported the collateral appeal, the interlocutory appeal. There wasn't any difference between those doctrines as they were stated, and this statute, they didn't say specifically immunity from suit. That was a court holding, and the courts, since it hasn't been construed, could certainly engraft that same onto this. Do you know if the Missouri courts have spoken to that? They have not. Okay. Well, thank you for addressing that, if you want to go on to your argument on the substance of it. Yes, that statute provides... Well, basically in a nutshell, let me just explain and take any questions if you have them. Our theory is that the cases relied on by Argonaut, they are talking about the forms of sovereign immunity, official immunity, public duty doctrine, those common law forms of immunities that were reinstated by the legislation after the Jones versus Highway Department case, and that they do not deal with statutes that were adopted after even the Kunze case was decided. So because this is a statutory immunity, it's not waived by those types of cases and those types of holding, and Kunze and Farm Bureau that case, unfortunately, was mine. I represented the same insurance company in that case, and that case had nothing to do with coverage. We stipulated that there was a million dollars worth of coverage. The issue was, are we a pure excess carrier, and do we have to pay pro grata? And I see I've used my time for my main argument. Thank you very much, Mr. Brown. Now we hear next from Mr. Gerber. Good morning. May it please the court, counsel? I'll get right to the jurisdiction issue, because Your Honor brought it up, and Mr. Brown said, we're here, so let's hear it anyway. Arguably, this court has jurisdiction over the immunity issues on an interlocutory appeal. The issue is whether or not it's an immunity from suit or from liability. So we understand, obviously, that there are plenty of cases that say that the court has jurisdiction on immunity issues on an interlocutory basis, and we understand why Mr. Brown filed his interlocutory appeal for that issue. After that, all the other issues on whether or not there was a duty owed by the defendant, whether or not there was a violation, whether or not there's evidence of gross negligence. I could go on and on and on with his brief, are not issues that are ripe for an interlocutory appeal. Those have to do with the sufficiency of the evidence, and I believe under the Robbins versus Becker case, citing the U.S. versus Mitchell court, when hearing an interlocutory appeal, should not entertain questions involving issues of fact, especially issues that have to do with a genuine issue of fact from the motion for summary judgment. But you think on the reformation issue, which was an issue of fact that was decided by the court, that decides the first immunity issue under the statute? Well, I mean, it doesn't decide it entirely, I guess, because you have the exceptions, but you think we have jurisdiction over whether the reformation decision was correct? I don't think the court does have jurisdiction over the reformation. I don't think that that's a collateral order. Okay. Well, what did you mean then when you understood we had jurisdiction over immunity issue? On the immunity issue on whether or not, by maintaining in a policy of insurance, whether or not that acts as a waiver of under the 610, 537, 610 statute, and also 190, which is what the court determined, that it is a waiver under CUNZI of all immunities, including 190. That, understandably, can be heard interlocutory. But a reformation issue that is commonly done in the circuit courts and in the federal courts, I don't believe that that has the unsettled questions of law that meet the burden of a collateral order doctrine where people would be coming up on... Isn't it integral, though, to the finding of immunity here? That's the argument, and that's understandable, that without the reformation, if we lose the reformation, but for that, we may still have immunity. But in this case, even if the court reformed the policy, we're still going to trial anyway. It doesn't end the case. For example, in the Robbins case and the Mitchell case, if there was immunity, that case is over. It stops. In this case, we're still going to trial. There are a number of other issues to try. For example, exceptions to the immunities. The dangerous condition exception. Whether or not 190 applies, there are still a number of issues that need to be tried, so it does not end this proceeding. So what do you think we have jurisdiction to decide? I think the court has jurisdiction, arguably, over this issue. And the issue is, is that when a public entity maintains a policy of insurance under 537.610, does that waive immunity for all immunities? Including the 197, you mean? Or the 190.307. 537.610 is the... No, I know, but you say we have jurisdiction to decide whether that statute and the policy of insurance waives the immunity under 190.307. You think we have a legal issue? Yes, I do. Yes, I do. What the court decided was, there's only... The Missouri Supreme Court, even though 190.307 is only immunity from damages? Well, that is correct, Your Honor. It is an immunity... It does not... It should be an immunity from suit for there to be jurisdiction. I agree with that. But what Mr. Brown said, eventually that has to be heard anyway. And since we are here and it's already been briefed, to the extent that this court has any jurisdiction, it would be on that, although we question that. We question whether or not even 537.610, I question whether or not that is an immunity from suit. 537.610 merely states that if you have insurance that covers the action, that the plaintiff can recover from that insurance. That's all it says. It doesn't say you're immune from suit. It doesn't say you can't go to suit. In fact, you'd have to have a trial to determine the damages, to determine what's covered by insurance and what's not. So I question... But it does say sovereign immunity for the state of Missouri and its subdivisions is waived only to a certain extent. And doesn't that sovereign immunity include immunity from suit? In Missouri? It would be immunity from suit above and beyond insurance. Yeah. Above and beyond insurance. So you would still have to have a trial and a hearing. Well, I see what you mean. It's not really divisible. It's hard to divide it out. And what's interesting after that, Your Honor, once... Let's just say we obtain a judgment for $3 million and there's a policy for $2 million. Well, the $2 million, that's been... Sovereign immunity has been waived. So we could collect the $2 million from the insurance company, not from the party itself. Then the issue is, does the defendant have immunity under 190 or any other immunities for the balance when we try to collect directly from them? And that's where you'll need a hearing on the dangerous exception I'd have to prove. I'd have to prove other exceptions to those immunities. So it is questionable whether or not this court... And again, we briefed these issues. And I assume because the court said, proceed with the briefs, that our motion to strike for jurisdictional purposes was denied. But now as I start to hear the questions, maybe... Well, it was an administrative panel. It wasn't the same panel as this panel and... I may have misunderstood the question. No, I'm not saying you did. It's just that maybe some of us weren't involved in that. So we're thinking about it for the first time. But the order... What did the order say? The order didn't say denied, it just said brief... Proceed. It said proceed. I may have misread that. I read into that that it's denied that the issue of at least immunity was going to be heard. We did not expect the brief to have the reformation issue, to have the duty issue, to have... Well, that's another question. The fact that the briefing continued doesn't necessarily mean that we have jurisdiction over everything that was briefed. Well, and hence, it gets back to my jurisdictional arguments that I don't think the court does. I don't think the court has... Number one, I don't... The reformation, there was a hearing on reformation. I guess it could be called a trial. It was a bench trial on reformation. Why can't that be heard afterwards? Why can't that be heard like any other appeal? I'm sorry, Judge Weldon. Yeah, well, I know you filed a motion to strike directed at parts of the brief. Did you also file a jurisdictional motion on the entire appeal? Yes. Yes. I think the court... I think what happened was from the very beginning, the court asked us, once the interlocutor appeal was filed, to file jurisdictional statements. And then after the court said proceed, Mr. Brown filed his brief, and I think we filed a motion to dismiss... Yeah, then we filed a motion to dismiss those portions of the brief that we thought were beyond the collateral order rule. Okay, but initially, you filed a motion to dismiss the entire appeal. Is that right? Or am I misunderstanding? I don't remember that. No, I don't think that we did, Your Honor. I think the motion to dismiss was filed after we received the brief. Well, that would have been motion to strike portions of the brief. I'm aware of that. Then there must not been... I don't think that there was a motion to dismiss. It was kind of a motion to dismiss, Your Honor. I'm caught off guard on whether it was before or after. I don't remember the procedure. It'll be on the docket. Okay. Well, if we agreed with the appellant... Let's see. If we agreed on the reformation issue, if the district court is correct, then there is no immunity. If the district court... I mean, there's no waiver. There is a waiver because... Yes, because they made it up to the insurance. But if the appellant is correct, then there is a certain amount of sovereign immunity. If the reformation would have been granted, and you would have won that, then the court would have said that the policy had the proper endorsement so that there is not a waiver of sovereign immunity, so we would have to proceed to trial on two issues. On the exceptions under 537 and 600, which is the dangerous condition, and gross negligence under 190. So you're saying... Well, depending on how that issue comes up. Right. Even if 190 applies... Even if they win on that, even if it applies, you still would go to trial. So you're saying even if they win, they won't be immune from suit? No, absolutely not. We're going to trial no matter what. In fact, I thought Judge Fleisig accurately pointed that out in her order, that we're going forward no matter what. It's just, if the reformation is granted, the issues at trial would be limited. Limited to whether 190 applies, and if so, can I show gross negligence and the dangerous condition exception? You have it exactly right, Your Honor. So a couple of interesting facts on this, and if it's not time to talk about the facts, I'm sure the court will stop me, but this was a grocery store, had an alarm system, had an agreement with a company named Q Security. Q Security in turn gave it to the 911 Center to monitor. It is an admitted fact that the employees of Audrain County, who work in the 911 Center, were monitoring a private panel only for private services for this grocery store and a few other private companies. Why they were monitoring it, we don't know. It was a predecessor company and a predecessor 911 agency that started, that first took possession of this panel, but it was a private panel. It is not part of the 911 equipment, nor is it a 911 service. Lights were burnt out on the panel. This was known to the employees of Audrain County several months before this fire. They even wrote a memorandum. If there's a fire at one of these locations, we won't know where to send the fire department, and they sent that to their superior, Chris Harden. Ms. Harden did not... You're losing me a little bit. How does this relate to the immunity issues? Well, it has to do with, there's a question on whether 190 even applies at all, on whether or not this was an operation under the 911 statute. That's the point of those facts. In regard to the immunity, I think it's important to talk about the Kunze case. The Kunze case is... Well, go ahead on that. I just didn't understand. You're saying that 307 doesn't apply because this was not an operation under the 911 statute? That's correct, Your Honor. This is the pursuant to versus... Pursuant to versus permitted by. Yeah. It says that you shall have... They don't use the word immunity. I think it's a limited of pursuant to the statutes, and that's not what was happening here. But I do believe one of the key issues in this case, and I am skipping around here, is the Kunze case. The Missouri Supreme Court looked at this issue. The Missouri Supreme Court could have very easily said that by maintaining insurance under 537.610, that that is only a waiver of sovereign immunity. They didn't say that. They went out of their way and they said, by maintaining insurance under 537.610, it is a waiver of all immunities. And on its own, not even in response to questioning by the appellee or the appellant, they said, and our prior ruling in the Juggerman case, that is not inconsistent with this because the statute granting immunity in that case was not a waiver of all immunity statute. That wasn't even a waiver statute. 537.610 is meant to waive everything to the extent of insurance. The court could have very easily said that this only applies to sovereign immunities. It doesn't apply to certain immunities, but it didn't. It said all and all means all. I do not think that there's even an inconsistency between 537.610 and section 190. 537.610 only has to do with insurance. It does not expose Auduron County to any liability whatsoever. Are there any questions that the court has? It appears not. Okay. Thank you very much. Thank you very much. We will next hear in response. Mr. Brown. Excuse me. As to the jurisdictional issue, I did want to say just briefly, whether the policy is reformed or not is the issue that decides immunity and the scope of any trial. If there was anything... First of all, those issues are subject to summary judgment as to whether there's a dangerous condition, whether a burnout light bulb constitutes a dangerous condition upon the land upon which sovereign immunity is weighed. The Kunze case is an interesting case and it is a... Was Mr. Gerber right though, that if reformation was granted, there would still be further proceedings? I believe that there would be a summary judgment or a summary resolution on the issues he raised, but there could be... If reformation were granted, then 537.600 would bar everything. So you wouldn't have a trial on the exceptions in Section 190, Chapter 190, because that's a lesser type of immunity. So you wouldn't have to find willful conduct or anything like that, because 537.600 is complete bar. Well, wouldn't you go into the exceptions under 600? Yeah, but it wasn't a motor vehicle and the only other one is dangerous condition upon the land, and I think that that could be resolved in summary fashion. But if it was not, then there would be a trial on that issue. It's also important to note that as to this court's jurisdiction and why the court should decide the issue at this time, on the issue of over. That will not be a part of the subsequent trial that my opponent refers to. That was a bench tried case and the judge has issued her decisions. So again, jurisdiction, I can certainly see the arguments both way on that, but you're not gonna be in a position where it would be superseded by some other proceedings later. Kunze was an employment case, wrongful discharge case, and if you actually look at that case, it's clear that what appellant is relying on is dicta. It says in footnote four, this absolute waiver includes governmental function immunity, the discretionary immunity doctrine, and the public duty doctrine. So they are clearly referring to those types of common law immunities that are restored by Chapter 537. They are not talking about statutory immunities. The Jungerman statutes, Chapter 71.185, those are not immunity statutes like we think about in this case. They are extending liability to cities under certain circumstances. And even the Supreme Court distinguishes that case from this case here. So Kunze does not provide any authority that there's a waiver. In fact, when Kunze was decided, the second statute at issue, Chapter 190.307, wasn't even in existence, so it certainly couldn't have been an express waiver of that. There are a lot of issues in this case, but everything has been fully briefed. I guess I should mention just very briefly the issue that Appley raises as to whether this private panel, this box that wasn't owned by us, whether that's operation of an emergency system. And it clearly is. We're monitoring it, we're doing everything that we would do for every other piece of equipment. The fact that it's privately operated. I equate the box to kind of like a window. It's one of those things, it's an asset, we look... If there was a window, we would look at it. And if we see someone have a crash and there's a fire in their car, we would dispatch. It doesn't mean that we should cover up the window just because sometimes it's dirty and malfunctions a little bit. We get what information we can. It's not our box, they maintain it. The truth is that this box became an orphan when Crow sold to the new company. They may not have even known it exists until we called and told them there was a problem with it, and they came out six times to work on it. So any duty we satisfy. And I think at that point, unless there are questions, I will let this rest. Thank you very much. The case has been well presented and we'll take it under advisement and render a decision on due course. And we thank you both for your attendance here today.